UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
LUTHERAN MEDICAL CENTER,

                Plaintiff,

  -against-                              **MEMORANDUM & ORDER**
                                           14-CV-731 (FB) (RML)
SYLVIA MATHEWS BURWELL, in her    14-CV-732 (FB) (RML)
official capacity as Secretary of the United
States Department of Health and Human
Services

                Defendant.
------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*                           *For the Defendant:*
ROY W. BREITENBACH                 ROBERT L. CAPERS
COURTNEY A. ROGERS              United States Attorney
Garfunkel Wild, P.C.                    Eastern District of New York
111 Great Neck Road                     271 Cadman Plaza East
Great Neck, NY 11021                 Brooklyn, New York 11201

                                           By:   KATHLEEN A. MAHONEY
                                                   Assistant United States Attorney

**BLOCK, Senior District Judge:**

       Lutheran Medical Center (the "Hospital"), a not-for-profit, general hospital, brings these actions against Sylvia Mathews Burwell, in her capacity as Secretary of the Department of Health and Humans Services, to challenge decisions of the Provider Reimbursement Review Board ("PRRB") that it did not have jurisdiction to consider certain issues. Both parties move for judgments on the pleadings; the Secretary's motions are granted and the Hospital's are denied.

# I

Pursuant to the Medicare program, established under Title XVIII of the Social Security Act, medical providers are reimbursed for services they supply to eligible patients. 42 U.S.C. § 1395 *et seq.* Medicare also reimburses approved teaching hospitals, such as Lutheran Medical Center, for various costs associated with graduate medical education, including the salaries and benefits for residents and interns. *See* 42 C.F.R. § 413.75. The amount of the reimbursement relating to graduate medical education is based, in part, on the number of resident and intern Full-Time Equivalents ("FTEs") in the hospital's training program. *See* 42 U.S.C. § 1395ww(d)(5)(B)(ii); 42 C.F.R. § 413.79. The FTE count "is equal to the average of the weighted FTE count for the payment year cost reporting period and the preceding two cost reporting periods." 42 C.F.R. § 413.79(d)(2) & (3).

A provider's cost reports are audited by a Medicare Administrative Contractor ("MAC"). *See* 42 U.S.C. § 1395kk-1. Upon completion of an audit, the MAC determines the total payment due to the provider for the cost year and issues a Notice of Program Reimbursement ("NPR"), which states the amount due, identifies any adjustments, states the amount of any Medicare overpayment and reimbursement owed to the Medicare program, and the reasons for the determination. 42 C.F.R. §§ 405.1803(a)-(b). If a provider is dissatisfied with the MAC's final determination as to the amount of reimbursement due for a particular cost reporting period, it may appeal

to the PRRB. 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.

The Secretary and the PRRB, consistent with their statutory authority, have promulgated rules and regulations that govern the procedures for hospitals to bring claims before the PRRB. *See* 42 U.S.C. § 1395oo(e); 42 C.F.R. § 405.1835 et seq. The PRRB conducts adversary hearings at which the provider and the MAC may submit testimony and documents, examine witnesses, and present argument. *See* 42 C.F.R. §§ 405.1851, 405.1855, 405.1859, 405.1861. The PRRB's decision is final and binding on the parties to the hearing unless it is reversed, affirmed, modified, or remanded by the Secretary within sixty days. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1871.

A provider may obtain judicial review of an adverse PRRB decision, which is a final decision of the Secretary, by initiating a civil action in district court, 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1877; a district court's review is limited to setting aside only agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994).

## II

The MAC calculated that the Hospital had been underpaid $646,868 and $643,750 for fiscal years 2001 and 2002, respectively. The Hospital filed separate hearing requests for both fiscal years. At the time the hearing requests were filed, the

Hospital's hearing request for fiscal year 2000 was also pending before the PRRB. In its 2000 challenge to the NPR, the Hospital disputed, among other things, the MAC's FTE calculation.

In its fiscal year 2001 hearing request, the Hospital identified five issues for the PRRB to consider. The first three issues related to the MAC's calculation of disproportionate-share adjustments.[1] The other two issue statements alleged: "The [MAC] incorrectly calculated the number of intern and resident full-time equivalents for graduate medical education purposes," and, "[t]he [MAC] improperly calculated the Medicare settlement data." AR 36.[2]

In its fiscal year 2002 hearing request, the Hospital identified four issues for the PRRB to consider. The first three issues related to the MAC's calculation of disproportionate-share adjustments. The other issue statement provided: "The [MAC] improperly calculated the Medicare settlement data." AR2 34.[3]

On August 30, 2007, the Hospital filed its final position paper for fiscal year 2001. Regarding the FTE-count issue, the Hospital argued that the MAC counted time interns and residents spent at "non-provider settings." AR 25. With respect to

---

[1] Medicare providers are entitled to an adjustment to their reimbursement based on the disproportionate share of low-income patients that they serve. *See* 42 U.S.C. § 1395ww(d)(5)(F).

[2] Citations to "AR" refer to the Administrative Record for 14-CV-731.

[3] Citations to "AR2" refer to the Administrative Record for 14-CV-732.

Medicare settlement data, the Hospital lumped this issue with its discussion of disproportionate share adjustments, and did not specifically identify what Medicare settlement data was at issue outside its arguments related to disproportionate share adjustments.

On December 26, 2007, the Hospital filed its final position paper for fiscal year 2002. While it again identified the Medicare settlement data, the entirety of its substantive argument related to disproportionate share adjustments. AR2 139-143. The Hospital did not identify specific Medicare settlement data with which it took issue.

The PRRB eventually scheduled separate hearings for each fiscal year in late 2013. Prior to the hearings, the Hospital submitted a letter to the MAC setting forth its "major points." AR 208, AR2 229. The Hospital argued for both fiscal years 2001 and 2002 that the FTE count should be adjusted based on the outcome of their appeal for fiscal year 2000 ("FTE Carryover Issue").

The MAC filed jurisdictional challenges with the PRRB as it related to the FTE Carryover Issue for both 2001 and 2002. It argued that the PRRB lacked jurisdiction over the issue because it was "not properly and timely briefed in a Position Paper." AR 142, AR2 186. The PRRB agreed. It issued decisions for both fiscal years that referenced the Secretary's and PRRB regulations that required the Hospital to "identify the aspects of the [NPR] with which it is dissatisfied," and "precisely identify the component of the . . . issue that is in dispute." AR 98, AR2 4. Because the Hospital

did not identify the FTE Carryover Issue in the hearing requests or position papers, the PRRB found it did not have jurisdiction over it.  With respect to fiscal year 2001, the PRRB specified—because the Hospital had identified the other FTE-Count issue—that its consideration of FTE issues was "limited to what the [Hospital] specifically briefed in its Final Position Paper, namely the current year FTE counts as they relate to . . . residents who rotated to non-provider settings."  AR 99.

The MAC subsequently filed additional jurisdictional challenges to the PRRB related to, among other things, the Medicare settlement data issues.  The MAC argued with respect to both appeals for fiscal years 2001 and 2002 that the Hospital "did not specifically state which Settlement Data Adjustments were in dispute," and therefore, the issue was not properly preserved.  AR 33, *see also* AR2 28.  The PRRB again agreed; because "there was no specificity in the [Hospital]'s appeal request" as it related to the "settlement data issue," the PRRB found "it d[id] not have jurisdiction over the settlement data issue."  AR 527-28, AR2 417-18.

The Hospital now appeals to this Court the PRRB's decisions dismissing for lack of jurisdiction the FTE Carryover and settlement data issues.  It seeks a remand to the PRRB for consideration of those issues on the merits.[4]

### III

---

[4] Although the appeals for fiscal years 2001 and 2002 are separate actions, the Court considers them together due to the identical legal issues presented.

"Congress vested in the Secretary large rulemaking authority to administer the Medicare program," *Sebelius v. Auburn Reg'l Med. Ctr.*, 133 S. Ct. 817, 826 (2013), and the PRRB has the "full power and authority to make rules and establish procedures, not inconsistent with the [Medicare Act] or regulations of the Secretary," which are necessary or appropriate," 42 U.S.C. § 1395oo(e), to administer its "immense caseload," *High Country Home Health, Inc. v. Thompson*, 359 F.3d 1307, 1310 (10th Cir. 2004). The PRRB's "[s]trict procedural requirements . . . help manage a docket both by encouraging timely filing and by allowing [it] to ignore late or improperly presented claims." *Id.* Various courts have upheld applications of the PRRB's stringent rules because they "are reasonable and necessary to the smooth functioning of the agency appellate process, and therefore cannot be considered arbitrary and capricious or an abuse of agency discretion." *UHI, Inc. v. Thompson*, 250 F.3d 993, 996-97 (6th Cir. 2001); *see also Kaiser Found. Hosps. v. Sebelius*, 649 F.3d 1153, 1158 (9th Cir. 2011) ("The position paper requirements assist in narrowing the issues on appeal and efficiently managing the Board's caseload." (citation omitted)); *High Country Home*, 359 F.3d at 1313 ("The Board's two-stage process helps ensure that the parties clearly identify the precise nature of their dispute, and gives the Board the benefit of adversarial testing to expose flaws in superficially sound arguments on either side of the controversy.").

At the time the Hospital filed its hearing request, the Secretary's regulations

required that an appeal request "must identify the aspects of the [MAC's] determination with which the provider is dissatisfied, explain why the provider believes the determination is incorrect in such particulars, and be accompanied by any documenting evidence the provider considers necessary to support its position." 42 C.F.R. § 405.1841(a)(1) (2006). Additionally, the PRRB Rules provided:

> You must identify the specific issues, findings of fact and conclusions of law with which the affected parties disagree; and you must specify the basis for contending that the findings and conclusions are incorrect. If you use an acronym, you must define it first. You must clearly and specifically identify your position in regard to the issues in dispute. For instance, if you are appealing an aspect of the disproportionate share (DSH) adjustment factor or calculation, do not define the issue as "DSH". You must precisely identify the component of the DSH issue that is in dispute.

2002 PRRB Rules, Part I § B.II.a.

The Hospital's hearing requests and final position papers did not identify the FTE Carryover issue. This issue first appeared in the Hospital's major-points letter to the MAC, nearly seven years after it filed its hearing requests. The Hospital thus failed to identify in its hearing requests the FTE Carryover issue as an "aspect of the [MAC's] determination with which [it] was dissatisfied," 42 C.F.R. § 405.1841(a)(1) (2006), and did not "clearly and specifically identify [its] position" with regards to that issue, 2002 PRRB Rules, Part I § B.II.a. Accordingly, the PRRB was authorized to dismiss the issue for lack of jurisdiction.

The Hospital argues, nonetheless, that dismissal of the FTE Carryover issue was

unwarranted because the Secretary's regulations provide that any change to the FTE count for fiscal year 2000 should "automatically adjust" the count for fiscal years 2001 and 2002 as well. Indeed, the Secretary's regulations provide: "the hospital's weighted FTE count is equal to the average of the weighted FTE count for the payment year cost reporting period and the preceding two cost reporting periods." 42 C.F.R. § 413.79(d)(2). However, even assuming that the Hospital would prevail if the FTE Carryover issue was considered on the merits, the Hospital failed to comply with the strict requirements set forth in the Secretary's regulations and the PRRB rules to put the issue properly before the PRRB. *High Country Home*, 359 F.3d at 1315 ("The Board could have heard all of High Country's complaints about the Intermediary's procedural and substantive mistakes if they had been timely presented, and when they were not, the Board was under no obligation to consider the merits before dismissing the claims on procedural grounds."). Because such regulations and rules "are reasonable and necessary for the smooth functioning of the PRRB's agency appellate process," *UHI* 250 F.3d at 996-97, their strict application to the Hospital was not arbitrary, capricious, an abuse of discretion, or contrary to law.

With respect to the settlement data issue, the Hospital identified the issue in its hearing requests, but failed to provide any specifics on what data it was referring to or how it was miscalculated. Without more, the hearing requests were deficient and provided the PRRB sufficient bases to exercise its authority to dismiss. 42 C.F.R.

§ 405.1841(a)(1) (2006); 2002 PRRB Rules, Part I § B.II.a.

The Hospital argues that its final position papers provided five pages of argument specific to the settlement data issue, and therefore, the settlement data issue was properly before the PRRB. After reviewing those pages, the Court disagrees. The pages to which the Hospital refers include only the Hospital's discussions of disproportionate share adjustments. However, the Hospital did not reference any particular medicare settlement data nor include any of the PRRB's requirements for position papers as it related to the issue. *See* 2002 PRRB Rules, Part II § B.IV.b ("[T]he description of an issue must include a summary of the pertinent facts and circumstances and cite the relevant statutory provisions, regulations, CMS Rulings, and other controlling authorities. You must identify the monetary amount, and explain its computation, for each item in dispute."). Accordingly, the Court will not disturb the PRRB's decisions to dismiss the issues.

## IV

The Secretary's motions for judgment on the pleadings are granted and the Hospital's motions are denied.

**SO ORDERED.**

                                                        /S/ Frederic Block  
                                                       FREDERIC BLOCK  
                                                       Senior United States District Judge

Brooklyn, New York  
July 13, 2016